## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

IN RE:

**KLINE, BERTRAM and JOANNE,**

**DEBTORS**

**Chapter 13**
**Case No. 15-13929**

### OPPOSITION TO EMERGENCY MOTION FOR CONTEMPT AND
### IMMEDIATE RETURN OF FUNDS OF THE BANKRUPTCY STATE (*SIC*)

Santander Bank, N.A. ("Santander") opposes the relief sought in the Debtors'
Emergency Motion for Contempt and Immediate Return of Funds of the Bankruptcy
State (*sic*) (the "Motion"). In opposing the relief sought in the Motion, Santander will
rely on the Affidavit of Timothy M. Williams, submitted herewith.

Santander responds to the allegations of the Motion as follows:

### I) FACTS

1.      Santander admits the allegation of Paragraph 1 of the Motion that the Debtors
filed a "bankruptcy Chapter 13 petition (15-10065) on January 8, 2015," and has
insufficient knowledge to admit or deny the remaining allegations of that paragraph, and
so denies them.

2.      Santander admits the allegation of Paragraph 2 of the Motion that the "Debtors'
case got dismissed," and has insufficient knowledge to admit or deny the remaining
allegations of that paragraph, and so denies them.

3.      Santander admits the allegations of Paragraph 3 of the Motion to the extent that
they are intended to assert that Bertram Kline was indebted to Santander on account of
his personal guaranty of a corporate debt.

4.      Santander denies the allegations of Paragraph 4 of the Motion.

5.      Santander admits the allegations of Paragraph 5 of the Motion.

6.      Santander denies the allegations of Paragraph 6 of the Motion.

7.      Santander admits the allegations of Paragraph 7 of the Motion.

8.      Santander admits the allegation of Paragraph 8 of the Motion that "on May 9, 2015, Debtors filed this current Chapter 13 petition," and has insufficient knowledge to admit or deny the remaining allegations of that paragraph, and so denies them.

9.      Santander denies the allegations of Paragraph 9 of the Motion.

10.     Santander admits the allegations of Paragraph 10 of the Motion.

11.     Santander admits the allegations of Paragraph 11 of the Motion.

12.     Santander has insufficient knowledge to admit or deny the allegations of Paragraph 12 of the Motion, and so denies them.

13.     Santander denies the allegation of Paragraph 13 of the Motion that Bertram Kline listed his ownership of BK Enterprises, Inc. "in his Bankruptcy Schedules B (Assets)," and has insufficient knowledge to admit or deny the remaining allegations of that paragraph, and so denies them.

14.     Paragraph 14 of the Motion is definitional requires no answer.

15.     Santander has insufficient knowledge to admit or deny the allegations of Paragraph 15 of the Motion, and so denies them.

16.     Santander admits the allegation of Paragraph 16 of the Motion that ""BK has a bank account with Santander," and has insufficient knowledge to admit or deny the remaining allegations of that paragraph, and so denies them.

2

17.     Santander has insufficient knowledge to admit or deny the allegations of Paragraph 17 of the Motion, and so denies them.

18.     Santander has insufficient knowledge to admit or deny the allegations of Paragraph 18 of the Motion, and so denies them.

19.     Santander denies the allegation of Paragraph 19 of the Motion that "BK is part of the bankruptcy estate, and admits the allegation of that paragraph that "the income of the Debtor is a part of the bankruptcy estate."

20.     Santander admits the allegations of Paragraph 20 of the Motion that "Debtor's earnings and profits are part of the bankruptcy estate," and denies those allegations to the extent that they are intended to convey or imply that the earnings and profits of BK Enterprises, Inc. (the "Corporation") are property of Bertram Kline's estate within the meaning of Sections 541 and 1306 of the Bankruptcy Code.

21.     Santander admits the allegations of Paragraph 21 of the Motion to the effect that Santander forwarded a letter dated March 2, 2016 to the Corporation, and denies the remaining allegations of that paragraph in that they inaccurately describe the contents of that letter.

22.     Santander avers that the allegations of Paragraph 22 of the Motion are not sufficiently understandable to frame a reply, and so denies them.

23.     Santander admits the allegation of Paragraph 23 of the Motion that "[n]either the Debtor nor BK defaulted on the loan for non-payment," and denies the remaining allegations of said paragraph.

## II) FACTS SUPPORTING EMERGENCY DETERMINATION

24.     Santander has insufficient knowledge to admit or deny the allegations of Paragraph 24 of the Motion, and so denies them.

25.     Santander admits the allegations of Paragraph 25 of the Motion.

26.     Santander admits the allegations of Paragraph 26 of the Motion.

27.     Santander denies the allegations of Paragraph 27 of the Motion.

28.     Santander denies the allegations of Paragraph 28 of the Motion.

29.     Santander denies the allegations of Paragraph 29 of the Motion.

30.     Santander denies the allegations of Paragraph 30 of the Motion.

31.     Santander denies the allegations of Paragraph 31 of the Motion.

32.     Santander avers that the allegations of Paragraph 32 of the Motion are conclusions of law and that no answer is required.

33.     Santander denies the allegations of Paragraph 33 of the Motion.

34.     Santander denies the allegations of Paragraph 34 of the Motion.

35.     Santander denies the allegations of Paragraph 35 of the Motion.

## III) PRAYER FOR RELIEF

36.     Santander avers and says that Paragraphs 36 through 40 of the Motion constitute prayers for relief and not factual allegations so that no response is required.  To the extent that a response is required, Santander answers that the claims asserted in the Motion are without factual or legal support, and the Debtors have not established their entitlement to the relief that they have requested.

## <u>ASSERTIONS IN AVOIDANCE OF LIABILITY</u>

The allegations of the Motion are misleading both in their recitation and characterization of the facts.  In support of its denial of liability in this matter, Santander avers and says as follows:

1.     Santander Bank, N.A. ("Santander") is a national banking association with a place of business at 75 State Street, Boston, Massachusetts, and was formerly known as Sovereign Bank.

2.     B.K. Enterprises, Inc. (the "Corporation") is a Massachusetts corporation that was formed on April 30, 1997 by Bertram Kline, as is shown by the Articles of Organization filed with the Secretary of State of the Commonwealth of Massachusetts, a copy of which is annexed hereto as Exhibit "A."

3.     The Corporation remains in existence and in good standing as is shown by the Corporation's 2015 annual report, filed with the Secretary of State of the Commonwealth of Massachusetts on January 30, 2016, a copy of which is annexed hereto as Exhibit "B."

4.     On or about August 4, 2004, the Corporation executed and delivered to Santander a certain Promissory/Term Loan/Line of Credit Note in the original principal amount of $40,000.00 (the "Note"), a copy of which is annexed hereto as Exhibit "C."

5.     The Note provided for the establishment of a discretionary line of credit in the amount of $40,000.00, required that interest be paid monthly in arrears, and also provided that the principal of the Note was payable on demand.

6.     Since before December 26, 2013, the line of credit provided for under the Note has been fully advanced, and no principal payments have been made.

7.      Under the Note, the Corporation was required to maintain its primary deposit relationship with Santander, and in fact, the Corporation opened a demand deposit account with Santander (the "Corporate Account"), under the Corporation's employer identification number.  The Corporation is the sole owner of the Corporate Account.

8.      The Corporate Account, which ends in the numbers 4758, was not listed in the schedules filed in this case as belonging to Bertram Kline, does not belong to Bertram Kline and is not property of the estate within the meaning of Sections 541 and 1306 of the Bankruptcy Code.

9.      As permitted under the Note, monthly interest payments were made on the Note by debiting the Corporate Account when each interest payment was due.

10.      On or about May 9, 2015, Bertram Kline filed his voluntary Chapter 13 petition (the "Petition") with this Court, which constituted an Event of Default under the Note.

11.      Although payment of the Note was personally guaranteed by Bertram Kline, as shown in Exhibit "C," the only indebtedness owing to Santander listed by Bertram Kline in Schedule D filed with this Court appears to be a home equity line of credit jointly owing by Bertram Kline and JoAnne Kline.  Bertram Kline's indebtedness to Santander as a guarantor of the Corporation's debt is not shown in the schedules filed in this case.

12.      In addition, although Bertram Kline claims to be the owner of the Corporation, his ownership interest is not listed in Schedule B, Item 13, which is where his ownership interest should be set forth, if it in fact exists.

13.      The filing of the Petition largely escaped Santander's notice until on or about March 2, 2016, when Santander received an email from Bertram Kline's bankruptcy

lawyers, a copy of which is attached as Exhibit "D," demanding that the interest payments debited by Santander from the Corporate Account be "returned to our client."

14.    In the Note, the Corporation agreed that following the occurrence of an Event of Default Santander could, in addition to all other rights and remedies, set off against the unpaid balance of the Note any funds in any deposit account maintained by the Corporation with Santander.

15.    Further, under the laws of the Commonwealth of Massachusetts, creditors in general have the right of set off of mutual debts, even in the absence of an agreement to that effect.

16.    On March 2, 2016, on consideration of the email from Bertram Kline's counsel, Santander decided to set off the funds in the Corporate Account against the Corporation's indebtedness to Santander under the Note, and forwarded a letter to the Corporation notifying the Corporation that it had done so (the "Notice Letter").

17.    The Notice Letter was not addressed to Bertram Kline, as an individual or as guarantor of the Note, but only in his capacity as President of the Corporation.

18.    In exercising its right of set off, Santander acted lawfully, within its rights and did not violate the automatic stay imposed when the Petition was filed or any other order of this Honorable Court.

19.    This Court lacks jurisdiction of the subject matter of the Motion.

20.    The Motion fails to state a claim upon which relief may be granted.

WHEREFORE, Santander Bank, N.A. respectfully requests relief as follows:

1.    That the Court decline to exercise jurisdiction over the dispute raised by the Motion and dismiss the contested matter initiated thereby.

7

2.      In the alternative, that the Court deny the relief sought in the Motion and enter an

order to that effect.

Respectfully submitted,

**SANTANDER BANK, N.A.**,
By its counsel,

/s/ Bertin C. Emmons
Bertin C. Emmons, BBO #154200
NH1-CB0-0410
125 Main Street
Salem, NH 03079
(603) 328-3064
bemmons@santander.us

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on the date appearing below, a copy of the foregoing was served electronically as provided in the Local Rules, and I caused copies of the foregoing pleading to be served upon the persons on the Service List by first class mail, postage pre-paid.

Dated:  March 9, 2016                              /s/ Bertin C. Emmons

## SERVICE LIST

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131

D

Examiner

Name
Approved

# The Commonwealth of Massachusetts

**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

## ARTICLES OF ORGANIZATION
(General Laws, Chapter 156B)

### ARTICLE I
The exact name of the corporation is:

R. K. Enterprises Inc.

### ARTICLE II
The purpose of the corporation is to engage in the following business activities:

To engage in the general business of
interior and exterior commercial, Industrial and
Residential Painting and maintenance of all types
and description and to carry on and conduct
any business incidental thereto.

C ☐
P ☐
M ☐
R.A. ☐

97320071

7
P.C.

Note: If the space provided under any article or item on this form is insufficient, additions shall be set forth on one side
only of separate 8 1/2 x 11 sheets of paper with a left margin of at least 1 inch. Additions to more than one article may be
made on a single sheet so long as each article requiring each addition is clearly indicated.

Exhibit "A"

## ARTICLE III

State the total number of shares and par value, if any, of each class of stock which the corporation is authorized to issue.

| WITHOUT PAR VALUE | | WITH PAR VALUE | | |
|---|---|---|---|---|
| TYPE | NUMBER OF SHARES | TYPE | NUMBER OF SHARES | PAR VALUE |
| Common: | 2,400 | Common: | None | N/A |
| | | | | |
| Preferred: | None | Preferred: | None | N/A |
| | | | | |

## ARTICLE IV

If more than one class of stock is authorized, state a distinguishing designation for each class. Prior to the issuance of any shares of a class, if shares of another class are outstanding, the corporation must provide a description of the preferences, voting powers, qualifications, and special or relative rights or privileges of that class and of each other class of which shares are outstanding and of each series then established within any class.

N/A

## ARTICLE V

The restrictions, if any, imposed by the Articles of Organization upon the transfer of shares of stock of any class are:

See . Continuation Sheet V A.

## ARTICLE VI

**Other lawful provisions, if any, for the conduct and regulation of the business and affairs of the corporation, for its voluntary dissolution, or for limiting, defining, or regulating the powers of the corporation, or of its directors or stockholders, or of any class of stockholders:

See Continuation Sheet VI A.

*If there are no provisions state "None".
Note: The preceding six (6) articles are considered to be permanent and may ONLY be changed by filing appropriate Articles of Amendment.

## CONTINUATION SHEET

2 A.   To buy, sell, hold, lease, own, encumber, pledge, issue, and
deal in all real estate, personal property, mortgages, leases,
securities in its own and other corporations, franchises, trade-
marks, copyrights, patents and licenses, as principal or broker.

To do all things and undertake all acts designed to increase
the profits of the corporation or its value or as otherwise
allowed as a business corporation under General Laws Chapter
156B.

The corporation shall have the power to guarantee the ob-
ligation of any other corporation or any other person or
company in which this corporation or any other person or
company is interested, directly or indirectly, or with which
this corporation does business except, however, this corporation
shall not carry on as a banking business.

In addition to the above powers, and in addition to all
statutory powers granted to business corporations under General
Laws Chapter 156B, to carry on the business activities stated
under the previous paragraphs as well as every kind of
business or activity not prohibited by law to the same extent
and with all rights, powers, and privileges as natural persons
might or could do, without exception, and to exercise all the
powers conferred upon business corporations organized under
the laws of the Commonwealth of Massachusetts.

This corporation may be a partner in any business enterprise
which said corporation would have power to conduct by itself.

5 A.   Any stockholder, including the heirs, assigns, executors or
administrators of a deceased stockholder, desiring to sell, or
transfer such stock owned by him or them, shall first offer it
to the corporation through the Board of Directors, in the
manner following:

He shall notify the directors of his desire to sell or transfer
by notice in writing, which notice shall contain the price at
which he is willing to sell or transfer and the name of one
arbitrator. The directors shall within thirty days thereafter
either accept the offer, or by notice to him in writing name a
second arbitrator, and these two shall name a third. It shall
then be the duty of the arbitrators to ascertain the value of
the stock. If any arbitrator shall neglect or refuse to appear
at any meeting appointed by the arbitrators, a majority may
act in the absence of such arbitrator.

After the acceptance of the offer, or the report of the arbitrators as to the value of the stock, the directors shall have thirty days within which to purchase the same at such valuation but, if at the expiration of thirty days, the corporation shall not have exercised the right so to purchase, the corporation shall not have exercised the right so to purchase, the corp-owner of the stock shall be at liberty to dispose of the same in any manner he may see fit.

No shares of stock shall be sold or transferred on the books of the corporation until these provisions have been complied with but the Board of Directors may in any particular instance waive the requirement.

6 A.   The Board of Directors of the corporation may make, amend, or repeal the By-Laws of the corporation, in whole or in part, except with respect to any provision thereof which, by law, the Articles of Organization, or the By-Laws require action exclusively by the stockholders entitled to vote thereon; but any By-Law adopted by the Board of Directors may be amended or repealed by the stockholders.

All meetings of stockholders of the corporation may be held within the Commonwealth of Massachusetts or elsewhere within the United States. The place such meetings shall be fixed in, or determined in the manner provided, in the By-Laws.

Each director or officer, present or former, of the corporation or of any other corporation a majority of the stock which is owned by the corporation, shall be indemnified by the corpora-tion against all costs and expenses reasonably incurred by or imposed upon him in connection with or arising out of any action, suit, or proceeding in which he may be involved by reason of his being or having been such director or officer, such expenses to include the cost of reasonable settlements (other than amounts paid to the corporation itself) made with a view to curtailing costs of litigation. The corporation shall not, however, indemnify any such director or officer with respect to matters as to which he shall be finally adjudged in any such action, suit, or proceeding, not to have acted in good faith in the reasonable belief that his action was in the best interests of the corporation, or in respect of any matter on which any settlement or compromise is effected if the total expense, including the cost of such settlement, shall substan-tially exceed the expense which might reasonably be incurred by such director or officer in conducting such litigation to a final conclusion. The foregoing right of indemnification shall not be exclusive of other rights to which any such director or officer may be entitled as a matter of law. In determining the reasonableness of any settlement, the judgment of the Board of Directors shall be final.

No contract or other transaction between this corporation and any other firm or corporation shall be affected or invalidated by reason of the fact that anyone or more of the directors or officers of this corporation is or are interested in, or is a member, stockholder, director, or officer, or are members, stockholders, directors, or officers of such other firm or corporation; and any director or officer or officers, individually or jointly, may be a party or parties to, or may be interested in, any contract or transaction of this corporation or in which this corporation is interested, and no contract, act or transaction of this corporation with any person or persons, firm, association or corporation, shall be affected or invalidated by reason of the fact that any director or directors or officer or officers of this corporation is a part or are parties to, or interested in, such contract, act or transaction; or in any way connected with such person or persons, firm, association or corporation, and each and every person who may become a director or officer of this corporation is hereby relieved from any liability which might otherwise exist from thus contracting with this corporation for the benefit of himself or any firm, association or corporation which he may be otherwise interested.

Each share of the corporation shall entitle the holder thereof to a preemptive right, for a period of thirty days, to subscribe for, purchase, or otherwise acquire any shares of the same class of the corporation or any equity and/or voting shares of any class of the corporation with the corporation which the corporation proposes to issue or any rights or options which the corporation proposes to grant for the purchase of shares of the same class of the corporation or of equity and/or voting shares of any class of the corporation or for the purchase of any shares, bonds, securities, or obligations of the corporation which are convertible into or exchangeable for, or which carry any rights, to subscribe for, purchase, or otherwise acquire shares of the same class of the corporation or equity and/or voting shares of any class of the corporation, whether now or hereafter authorized or created, whether having unissued or treasury status, and whether the proposed issue, reissue, transfer, or grant is for cash, property, or any other lawful consideration; and after the expiration of said thirty days, any and all of such shares, rights, options, bonds, securities or obligations of the corporation may be issued, reissued, transferred, or granted by the Board of Directors, as the case may be, to such persons, firms, corporations and associations, and for such lawful consideration, and on such terms, as the Board of Directors in its discretion may determine. As used herein, the terms, "equity shares" and "voting shares" shall mean, respectively, shares which confer unlimited voting rights in the election of one or more directors.

## ARTICLE VII

The effective date of organization of the corporation shall be the date approved and filed by the Secretary of the Commonwealth.
If a *later* effective date is desired, specify such date which shall not be more than *thirty days* after the date of filing.

## ARTICLE VIII

The information contained in Article VIII is not a permanent part of the Articles of Organization.

a. The street address (*post office boxes are not acceptable*) of the principal office of the corporation *in Massachusetts* is:

54 Shore Drive Winthrop, Ma. 02152

b. The name, residential address and post office address of each director and officer of the corporation is as follows:

|  | NAME | RESIDENTIAL ADDRESS | POST OFFICE ADDRESS |
|---|---|---|---|
| President: | Bert Kline, Jr. | 54 Shore Drive | Winthrop Ma. 02152 |
| Treasurer: | Bert Kline, Jr. | 54 Shore Drive | Winthrop Ma. 02152 |
| Clerk: | Bert Kline Sr. | 55 Shore Drive | Winthrop, Ma. 0215 |
| Directors: | Bert Kline Jr. | 54 Shore Drive | Winthrop Ma. 0215 |
|  | Bert Kline Sr. | 55 Shore Drive | Winthrop Ma. 0215 |

c. The fiscal year (i.e., tax year) of the corporation shall end on the last day of the month of: December

d. The name and business address of the resident agent, if any, of the corporation is:

N/A

## ARTICLE IX

By-laws of the corporation have been duly adopted and the president, treasurer, clerk and directors whose names are set forth
above, have been duly elected.

IN WITNESS WHEREOF AND UNDER THE PAINS AND PENALTIES OF PERJURY, I/we, whose signature(s) appear below as
incorporator(s) and whose name(s) and business or residential address(es) *are clearly typed or printed* beneath each signature
do hereby associate with the intention of forming this corporation under the provisions of General Laws, Chapter 156B and
do hereby sign these Articles of Organization as incorporator(s) this __30__ day of __APRIL__ , 19 __97__ ,

Bertram W. Kline Jr.      Bertram W. Kline Jr.

54 Shore Drive Winthrop Ma. 02152

(617) 846-7600

*Note: If an existing corporation is acting as incorporator, type in the exact name of the corporation, the state or other jurisdiction where
it was incorporated, the name of the person signing on behalf of said corporation and the title he/she holds or other authority by which
such action is taken.*

710

574546

## THE COMMONWEALTH OF MASSACHUSETTS

### ARTICLES OF ORGANIZATION
#### (General Laws, Chapter 156B)

I hereby certify that, upon examination of these Articles of Organiza-
tion, duly submitted to me, it appears that the provisions of the General
Laws relative to the organization of corporations have been complied
with, and I hereby approve said articles; and the filing fee in the amount
of $ 200.00 having been paid, said articles are deemed to have been
filed with me this 30th day of APRIL 19 97

Effective date: _____

WILLIAM FRANCIS GALVIN
*Secretary of the Commonwealth*

**FILING FEE:** One tenth of one percent of the total authorized capital
stock, but not less than $200.00. For the purpose of filing, shares of
stock with a par value less than $1.00, or no par stock, shall be deemed
to have a par value of $1.00 per share.

### TO BE FILLED IN BY CORPORATION
#### Photocopy of document to be sent to:

B.K. Enterprises Inc.

Bertram W. Kline, Jr.

54 Shore Drive, Winthrop Ma 02152

Telephone: (617) 846-7600

**D F**

Filing Fee: $125.00
Late Fee: $25.00

# The Commonwealth of Massachusetts

**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place - Room 1717, Boston, Massachusetts 02108-1512

160003411

FORM MUST BE TYPED

**Annual Report for Domestic
and Foreign Corporations**
(General Laws Chapter 156D, Section 16.22; 950 CMR 113.57)

043366182

(1) Exact name of the corporation: BK Enterprises Inc.

(2) Jurisdiction of incorporation: MA

(3) Street address of the corporation's registered office in the commonwealth *(number, street, city or town, state, zip code)*:
   40 Dolphin Ave., Winthrop, MA 02152

(4) Name of the registered agent at the registered office: Bertram Kline Jr.

(5) Street address of the corporation's principal office *(number, street, city or town, state, zip code)*:
   40 Dolphin Ave., Winthrop, MA 02152

(6) Provide the names and addresses of the corporation's board of directors and its president, treasurer, secretary, and if different, its chief executive officer and chief financial officer.

| | NAME | ADDRESS |
|---|---|---|
| President: | Bertram Kline Jr. | 40 Dolphin Ave.   Winthrop, MA 02152 |
| Treasurer: | Bertram Kline Jr. | same |
| Secretary: | Bertram Kline Jr. | same |
| Chief Executive Officer: | | |
| Chief Financial Officer: | | |
| Directors: | Bertram Kline Jr. | same |

(7) Briefly describe the business of the corporation:
   Commercial painting

(8-9) Capital stock of each class and series:

| CLASS OF STOCK | TOTAL AUTHORIZED BY ARTICLES OF ORGANIZATION OR AMENDMENTS Number of Shares | TOTAL ISSUED AND OUTSTANDING Number of Shares |
|---|---|---|
| COMMON | 2000 | 1000 |
| PREFERRED | | |

(10) Check if the stock of the corporation is publicly traded. ☐

(11) Report is filed for fiscal year ending: 12 / 31 / 2015
   *(month)*      *(day)*      *(year)*

Signed by: *Bertram W. Kline*   *President*   2/16/16

☐ Chairman of the board of directors   ■ President   ☐ Other officer   ☐ Court-appointed fiduciary
on this 30th _____ day of January _____, 2016

c156ds1022950c11357 11/23/09

Exhibit "B"



**Sovereign Bank**

## AUTHORIZING RESOLUTION
### (For corporate, limited liability company and other entity applicants.)

RESOLVED, That _Bertram Kline_ is authorized to apply for credit on behalf of this Corporation; and

FURTHER RESOLVED, That each of the above-named individual(s) is(are) authorized to sign and deliver any notes, in any amount, security agreements as to all or any of the Company's assets and any renewal, modification, extension and other agreements on behalf of this Company.

CERTIFICATION. I certify that: I am the Secretary, Assistant Secretary or other authorized official of the Company; the foregoing resolutions were adopted by the Company's Board of Directors, General Partners, Managers or other governing body; are in conformity with the provisions or the Company's organizational documents; are in full force and effect and have not been modified or revoked; and the signatures and titles set forth in the attached documents are the genuine signatures and titles of the persons indicated.

Signature of Secretary or Assistant Secretary                    Date   8/26/04
General Partner or Member

---

## PROMISSORY/TERM LOAN/LINE OF CREDIT NOTE
### (For loans and lines of credit in the principal amount of $100,000 or less)

Date: _08/26/2004_                                        Loan/Line No.¶

FOR VALUE RECEIVED, _B. K. Enterprises Inc._ (individually and collectively, jointly and severally (the "Borrower") with an address at _10 Locust Street , Winthrop , MA , 02152_ unconditionally, without setoff or defalcation promises to pay to the order of Sovereign Bank ("Lender") principal in the amount of _$40,000.00_, or such lesser amount as may be approved by Lender, plus interest at the rate and according to the terms provided for in this Promissory/Term Loan/Line of Credit Note (this "Note"). Borrower acknowledges that if Lender notifies Borrower it has been approved for a lesser amount and, thereafter, Borrower accepts an advance hereunder, Borrower will be deemed to have agreed to repay to Lender whatever amount Lender may lend from time to time.

**Line of Credit**      All Advances shall be payable on demand. Until demand is made, the Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning on _September 25th, 2004_, with all subsequent interest payments to be due on the same day of each month thereafter, with a final payment of all unpaid principal, interest, late charges and all other amounts recoverable under any other documents executed in connection herewith (the "Loan Documents")due on DEMAND. Prior to default hereunder and until all amounts evidenced by this Note are paid in full, interest shall accrue on all amounts outstanding from time to time at a variable annual rate of Lender's Prevailing Base Rate (Bank's Published Prime Rate) plus _1.99 %_. This loan may be subject to annual review and renewal by the Lender, which shall be in Lender's sole discretion, provided that any such review shall not impair the Lender's right to demand repayment at any other time. If the Lender has terminated its commitment to make Advances but has not demanded full payment on the balance, on each payment date the Borrower shall pay: (a) all accrued interest and unpaid interest and other charges assessed to the account through the payment due date; and (b) one forth-eight (1/48th) of the principal balance outstanding of the date the Bank terminated its commitment to make advances.

#### (See Additional Interest Rate Provisions below.)

ADVANCES. Any advance hereunder by Lender shall be conclusively presumed to have been made at the request of Borrower when (1) deposited or credited to an account of Borrower with Lender, or (2) made in accordance with the oral or written instructions of Borrower, or a party authorized to transact business on behalf of Borrower. In the case of a line of credit, Borrower shall obtain advances from Lender up to the Credit Limit by drawing a Business Line of Credit check. Any advances, either using Business Line of Credit Checks or otherwise, which cause the outstanding principal balance of the loan to exceed the face amount of this Note, will be payable on demand and added to the principal amount evidenced by this Note and the Borrower promises to pay the Lender all interest accrued on this amount as well as all additional monies advanced over the face amount.

INTEREST. Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed. In the event that Lender's

Exhibit "C"

Prevailing Base Rate is applicable, Borrower acknowledges that Lender's Prevailing Base Rate is designated from time to time, is subject to change without prior notice to Borrower and is not represented or intended to be the lowest or most favorable rate of interest offered by Lender. Each time Lender's Prevailing Base Rate changes, the interest rate hereunder shall change contemporaneously with such change effective as the opening on the date of change. Subsequent to demand and continuing after the entry of any judgment against Borrower, with respect to the obligations evidenced by this Note, interest shall accrue at an annual rate which shall be four percent (4%) plus the interest rate otherwise payable hereunder (the "Default Rate").

LATE CHARGES. If any payment due under this Note is not received by Lender within Fifteen (15) days after it is due, Borrower shall pay a late charge to Lender of Five (5%) percent of the overdue payment, but in no event will the late charge be less than Twenty-five ($25.00) Dollars. Any such late charge assessed is immediately due and payable.

FINANCIAL RECORDS. Borrower shall maintain its books and records at all times in accordance with GAAP, applied on a consistent basis, and permit the Lender (upon request) to examine and audit Borrower's books and records at all reasonable times.

FINANCIAL INFORMATION. Borrower shall furnish, within a reasonable time upon Lender's request, all financial information pertaining to Borrower such as but not limited to tax returns.

CHANGE IN FINANCIAL CONDITIONS. Borrower shall notify the Lender, within five (5) business days, of any substantial change in the Borrower's financial condition.

ANNUAL CREDIT LINE FEE. On each anniversary of the date of this Note, the Borrower will pay Lender an annual renewal fee of $100.00. This fee represents payment by Borrower, in advance, for use of the line of credit provided under this Note and Loan Documents.

DEPOSIT RELATIONSHIP. Borrower shall maintain its primary deposit relationship with Lender for the term of this Agreement.

ADDITIONAL INTEREST RATE PROVISIONS. *Unless otherwise agreed or required by applicable law, all payments will be applied first to interest, then to principal, then late charges, and any remaining amount to any unpaid collection costs.* If the Borrower does not open a Sovereign Bank Business Checking account from which the monthly payment is automatically deducted for the term of the loan, or refuses the pre-authorized internal transfer on an existing Sovereign Bank Business Checking, or cancels the pre-authorized internal transfer during the term of this loan, the interest rate will automatically be increased on the Note by an additional 1% over the stated interest rate in the section listed above. Also, if there are three (3) consecutive monthly occurrences of insufficient funds Borrower's pre-authorized transfer shall be cancelled and Borrower's interest rate will be increased by the percentage indicated above. Regardless whether pre-authorized internal transfer is in effect or has been revoked, upon the occurrence of an Event of Default (even those with which the passage of time or notice could become an Event of Default), Lender shall have the right, in addition to all other rights and remedies available to it, to set off against the unpaid balance of the Loan and any debt owing by the Borrower to the Lender, any funds in any deposit account maintained by the Borrower with Lender, and any other property of Borrower that may be in the possession of the Lender or its affiliates without regard to the adequacy of other collateral. Borrower shall not be obligated to pay and Lender shall not collect interest at a rate in excess of the maximum permitted by law or the maximum that will not subject Lender to any civil or criminal penalties. If, because of the acceleration, the payment of interest in advance or any other reason, Borrower is required, under the provisions of any Loan Document or otherwise, to pay interest at a rate in excess of such maximum rate, the rate of interest under such provisions shall immediately and automatically be reduced to such maximum rate, and any payment made in excess of such maximum rate, together with interest thereon at the rate provided herein from the date of such payment, shall be immediately and automatically applied to the reduction of the unpaid principal balance of this Note as of the date on which such excess payment was made. If the amount to be so applied to reduction of the unpaid principal balance exceeds the unpaid principal balance, the amount of such excess shall be refunded by Lender to Borrower.

CYCLE DOWN PROVISION. The Borrower will be required to pay down the outstanding balance of principal and accrued interest under the Note, at least once a year, to not more than forty (40%) percent of the Note. The Borrower will not be able to draw amounts over forty (40%) percent of the Note for a period of thirty (30) consecutive days during each year that the Line of Credit is available. Failure to pay down outstanding balances, as set forth herein is an Event of Default under this Agreement.

BUSINESS LINE OF CREDIT CHECKS. The Borrower acknowledges that Business Line of Credit Checks are not the same as checks drawn on a demand deposit account, but constitute requests for advances on a business line of credit, which may be made at the Lender's sole discretion and are repayable on the Lender's demand. The amount of each Business Line of Credit Check must be at least $500.00. Lender may refuse to honor any Business Line of Credit Check if: (i) it is received by the Lender after termination of the Business Line of Credit; or (ii) honoring such check would cause the total of all Borrower's obligations on the loan to exceed the face amount of this Note; (iii) an Event of Default has occurred; (iv) the amount of such check is less than Five-Hundred ($500.00) Dollars; or (v) the Lender for any other reason in good faith deems the prospect of repayment of this Note in full to be impaired. If, however, the Lender honors such a Business Line of Credit Check causing the outstanding principal balance of the loan to exceed the face amount of this Note, the excess amount will be payable on demand and added to the principal amount evidenced by this Note and the Borrower promises to pay the Lender all interest accrued on this amount as well as all additional monies advanced over the face amount. Business Line of Credit Checks may not be used to make any payment due to the Lender. Any authorized representative of Borrower may stop payment on any Business Line of Credit Check. A stop payment order must be given in time for the Lender to act upon it and must state the exact amount, exact date and precise identity of the payee of the Business Line of Credit Check. Oral stop payment orders must be confirmed in writing within 14 days. Subject to the provisions of this paragraph, Business Line of Credit Checks are subject to the same rules and regulations as apply to the Lender's business checking accounts.

**SWEEP AGREEMENT.** Borrower acknowledges and authorizes Lender to set up a zero balance Business Checking Account (the "Business Line of Credit Sweep Account") on which Business Line of Credit checks will be drawn for the sole purpose of advancing funds against Borrower's Line of Credit. The Sweep Account Number is

**EVENTS OF DEFAULT.** Each of the following shall be an "Event of Default" hereunder:

(a) the nonpayment when due of any amount owing by Borrower to Lender hereunder or under any other promissory note, instrument or obligation of whatever kind, heretofore or hereafter incurred, whether due or to become due, fixed or matured, and all interest, late charges, collection agency fees, costs and attorneys' fees (collectively, "Obligations"), or any default or Event of Default by Borrower under or as defined in any Loan Documents, or the failure of Borrower or any other person or persons liable on the Obligations (collectively, "Guarantors") to observe or perform any agreement of any nature whatsoever with Lender or with any affiliate of Lender;

(b) Borrower or any Guarantor becomes insolvent or makes an assignment for the benefit of creditors, or fails to pay any obligations to others as they mature, or if any petition is filed by or against Borrower or any Guarantor under any provision of any state or federal law or statute alleging that Borrower or such Guarantor is insolvent or unable to pay debts as they mature or under any provision of the United States Bankruptcy Code;

(c) the entry of any judgment against any Borrower or any Guarantor or any of Borrower's or any Guarantor's property which remains unsatisfied for thirty (30)days;

(d) the issuing of any attachment, levy or garnishment against any property of Borrower or any Guarantor;

(e) the occurrence of any substantial change in the condition (financial or otherwise) of any Borrower or any Guarantor that, in the sole judgment of Lender is materially adverse;

(f) the sale of all or substantially all of the assets of Borrower or any Guarantor or any change in ownership or management of Borrower, or the dissolution, liquidation, merger, consolidation or reorganization of Borrower, without the express prior written consent of Lender;

(g) the death, incarceration or adjudication of legal incompetence of the Borrower or any Guarantor;

(h) if any information or signature furnished to Lender by Borrower or any Guarantor at any time is false or incorrect in any material respect; or

(i) the failure of Borrower or any Guarantor to timely furnish to Lender such financial and other information as Lender may reasonably request or require pursuant to the Loan Documents or otherwise.

**RIGHT TO CURE.** If any default, other than a default on payment, is curable and if Borrower or Guarantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Borrower or Guarantor, as the case may be, after receiving written notice from the Lender demanding cure of such default: (1) cure the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Note, all commitments and obligations of Lender under this Note or and other agreement immediately will terminate (including any obligation to make further advances or disbursements), and, at Lender's option, all obligations immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of Event of Default of the type described in the subsection above, such acceleration shall be automatic and not optional. In addition, Borrower shall have all the rights and remedies provided in the Loan Documents of available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures of to take action to perform an obligation of Borrower or of any Guarantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**EXPENSES.** Lender shall be entitled to collect all expenses incurred in pursuing any payment due hereunder that is not paid when due, whether in accordance with the terms hereof, or by acceleration or otherwise (including all costs and attorneys fees incurred in connection with any bankruptcy or insolvency proceeding involving Borrower), and Borrower agrees to pay all costs of collection including, without limitation, reasonable attorneys fees and costs of in-house and/or outside counsel.

**MISCELLANEOUS.** Waivers; Amendments. Borrower waives the requirements of demand, presentment, protest, notice of protest and

dishonor and all other demands or notices of any kind in connection with the delivery, acceptance, performance, default, dishonor or enforcement of this Note. Borrower shall not be released from liability upon a change in the terms of this Note. No amendment of the Note and no waiver of any one or more of the provisions hereof, shall be effective unless set forth in writing signed by Borrower and Lender.

Entire Agreement. This Note and the other Loan Documents constitute the entire agreement of the parties hereto relating to its subject matter and supersede any and all prior and concurrent oral and written communications with respect to the subject matter herein.

Successors and Assigns. The Loan Documents shall be binding upon Borrower and its successors and assigns and shall inure to the benefit of Lender, its successors and assigns. Borrower may not assign or transfer Borrower's rights under the Loan Documents.

Severability. If any provision of the Loan Documents is found to be invalid or unenforceable, such provision shall be stricken and all remaining provisions of the Loan Documents shall remain valid and enforceable.

Governing Law. The construction, interpretation and enforcement of this Note shall be governed by the internal laws of Pennsylvania, excluding its principles of conflict of laws.

Borrower represents to the lender that the proceeds of this Note WILL NOT be used for personal, family or household purposes.

WAIVER OF JURY TRIAL. BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY MANNER ARISING IN CONNECTION WITH, OR RELATED TO, THE FINANCIAL TRANSACTION OF WHICH THIS NOTE IS A PART OR THE ENFORCEMENT OF LENDER'S RIGHTS AND REMEDIES WITH REGARD TO SUCH TRANSACTION.

WAIVER OF RIGHTS TO PREJUDGMENT REMEDY NOTICE AND HEARING. BORROWER WAIVES ANY RIGHT WHICH IT MAY HAVE TO NOTICE AND A HEARING OR A PRIOR COURT ORDER AS PROVIDED UNDER ANY APPLICABLE FEDERAL OR STATE LAW, IN THE EVENT THE LENDER SEEKS ANY PREJUDGEMENT REMEDY IN CONNECTION WITH THIS NOTE.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Borrower or its duly authorized representative has caused this Note to be executed as of the date above.

WITNESS/ATTEST:

BORROWER: B. K. Enterprises Inc.

(Seal)

Name: Bertram Kline

Title (if applicable): President

---

## UNCONDITIONAL PERSONAL GUARANTY OF PAYMENT

In consideration of the undertakings of Lender pursuant to the Note, each Guarantor hereby, individually, jointly and severally, guarantees and becomes surety for all amounts owing by Borrower to Lender under any promissory note, instrument or obligation of Borrower of whatever kind, heretofore or hereafter incurred, whether due or to become due, fixed, contingent or matured, and all interest, late charges, collection agency fees, costs and attorneys' fees (collectively, "Obligations").

This shall remain in full force and effect until all of the Obligations have been paid in full, including as the case may be, if payment of any of the Obligations is rescinded, avoided or otherwise returned or disgorged. The liability of the Guarantor is irrevocable, absolute and unconditional irrespective of: (a) any lack of validity or enforceability of any Loan Documents; (b) any change in the time, manner, place or amount of payment or in any other term of all or any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the terms of the Obligations; (c) any exchange, release or non-perfection of any collateral or lien securing all or any part of the Obligations (which exchange, release or non-perfection the Guarantor expressly agrees will not be deemed an unjustifiable impairment of the collateral); (d) any release or amendment of waiver of or consent to departure from any other guaranty, for all or any part of the Obligations; (e) any settlement or compromise with any Borrower or any other person relating to the Obligations; or (f) any other circumstances which might otherwise constitute a defense available to, or a discharge of, any Borrower or other obligor in respect of the Obligations or the Guarantor in respect of this Guaranty.

EXPENSES. Lender shall be entitled to collect all expenses incurred in pursuing any payment due hereunder that is not paid when due, whether in accordance with the terms hereof, or by acceleration or otherwise (including all costs and attorneys fees incurred in connection with any bankruptcy or insolvency proceeding involving Guarantor), and each Guarantor jointly and severally agrees to pay all costs of collection including, without limitation, reasonable attorneys fees and costs of in-house and/or outside counsel.

WAIVER OF JURY TRIAL. EACH GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY MANNER ARISING IN CONNECTION WITH, OR RELATED TO, THE FINANCIAL TRANSACTION OF WHICH THIS GUARANTY IS A PART OR THE ENFORCEMENT OF LENDER'S RIGHTS AND REMEDIES WITH REGARD TO SUCH TRANSACTION.

IN WITNESS WHEREOF, and intending to be legally bound hereby, each Guarantor or its duly authorized representative has caused this Guaranty to be executed as of the date below.

Signature of Guarantor

8/26/14      Bertram W. Kline, Jr.
Date         Print Name

## Emmons, Bertin C

**Subject:**          FW: Bertram Kline - BK Enterprises Inc - Post Bankruptcy Interest Withdraws

**From:** Evan Slater [mailto:evan@pklolaw.com]
**Sent:** Wednesday, March 02, 2016 1:08 PM
**To:** Burkes, Barbara
**Subject:** Bertram Kline - BK Enterprises Inc - Post Bankruptcy Interest Withdraws

Good afternoon Ms. Burkes,

I'm attaching a copy of the bank statements that show an ongoing withdraw of interest payments with regard to a loan that was personally guaranteed by our client Mr. Burtram Kline.

Also attached, is a notice of bankruptcy filing for your records and the bankruptcy petition which lists the line of credit included in the bankruptcy case.

Please forward this up to your legal team, we would be looking to have the post-petition interest that has been withdrawn, returned to our client.

Thank you,
Evan.


--

Evan Slater
Pérez-Kudzma Law Office, P.C.
Business Manager
413 Boston Post Rd.
Weston, MA 02493

Tel: 781-209-5596 ext. 1000
Cell: 781-591-2970
Fax: 781-314-8174

We appreciate and encourage client feedback. Please take the time to review us on Google.

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message.  This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges.  If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.  Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

Exhibit "D"